## TOLFREE v. NEW YORK TITLE & MORTGAGE CO. et al.*

## REES v. SAME.

### Nos. 421, 419.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1934.

Greenbaum, Wolf & Ernst, of New York City (Lawrence S. Greenbaum, Morris L. Ernst, Samuel J. Schur, Theodore S. Jaffin, Benjamin Kaplan, and Philip Levy, all of New York City, of counsel), for appellant George S. Van Schaick, Superintendent of Insurance of New York, as Rehabilitator of New York Title & Mortgage Co.

*Writ of certiorari denied 55 S. Ct. 216, 79 L. Ed. ——.

Mudge, Stern, Williams & Tucker, of New York City (Joseph V. Kline and David H. Houghtaling, both of New York City, of counsel), for appellant Bank of the Manhattan Co.

· Joseph Nemerov, of New York City (Joseph Nemerov and Maurice J. Dix, both of New York City, of counsel), for complainants-appellees, and Bainbridge Colby, Edwin L. Garvin, John M. McGrath, and Nathan D. Shapiro, trustees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On August 4, 1933, the defendant George S. Van Schaick, superintendent of insurance of the state of New York, applied to the New York Supreme Court for an order of rehabilitation of New York Title & Mortgage Company pursuant to the provisions of article 11 (section 400 et seq.) of the Insurance Law of that state (Consol. Laws, c. 28). On the same day the court made an order authorizing him to take possession of the property of the company and conduct the business thereof, and enjoining all creditors and other persons from bringing suit against the title company or the superintendent, or interfering with the administration of the latter. The superintendent took possession of the property of the company and is still conducting the business thereof. On September 22, 1933, acting under the so-called Schackno Act (chapter 745 of the Laws of 1933), he formally took over the functions of the title company, as authorized by that act, in rehabilitation in respect of certificate issues.

The complainants in the above suits were holders of participation certificates in mortgages deposited with Bank of Manhattan Company and running from the mortgagors to the New York Title & Mortgage Company. The certificates issued by the latter assigned to the holders an undivided share in the principal sum secured by the bonds and mortgages, guaranteed the payment of principal and interest at the rate specified, authorized the title company to collect the principal and interest in its own name and to pursue any remedies which any owner might pursue and to decide when and how to enforce any provisions of the bonds and mortgages, and appointed it irrevocably agent and attorney of all holders of certificates for the purpose of collecting interest and principal upon the bonds and mortgages, adjusting and collecting fire insurance, substituting other bonds and mortgages for those deposited, and deciding when and how to enforce the bonds and mortgages.

On December 29, 1933, the complainants, nonresident holders of certificates, filed bills in the United States court for the Northern district of New York against the New York Title & Mortgage Company, the superintendent of insurance, the deputy superintendent of insurance, and the Manhattan Company, the depositary. These bills, filed on behalf of the complainants and all other certificate holders similarly situated, in substance, alleged that the collateral underlying each issue represented a trust estate, that various acts on the part of the superintendent and the title company disqualified them from continuing as trustees for the holders of the certificates, and that the New York statutes under which the superintendent is acting are unconstitutional in that they deprive the complainants of the benefits of the trust estates of which they are beneficiaries. The bills prayed that the superintendent be removed, that suitable successors be appointed, and that he be enjoined from administering the property. On or about January 6, 1934, petitions for intervention were filed by the solicitor for the complainants on behalf of certificate holders who were residents of the state of New York, which were later withdrawn, in the belief that such intervention would destroy a jurisdiction based on diverse citizenship. The mortgages in which complainants have an interest are all upon lands within the Southern and Eastern districts of New York and, with the bonds, are physically on deposit at Bank of Manhattan Company in the borough of Manhattan, city of New York.

The District Court assumed jurisdiction of the suits, appointing temporary trustees of the bonds and mortgages underlying the series of participation certificates and enjoined the defendants from interfering with the possession or control of the trustees or from substituting any securities for those deposited, from paying out any moneys received except to the trustees, and from prosecuting any actions. We think that these orders cannot be justified and must accordingly be reversed.

In People v. Title & Mortgage Guarantee Company of Buffalo, 264 N. Y. 69, 190 N. E. 153, the Schackno Act under which the superintendent of insurance is administering investments of mortgage guaranty companies and making plans for permanent administration of mortgages in which groups of investors are interested was declared constitutional by the New York Court of Appeals.

Its validity must be assumed in order to authorize a single District Judge to enjoin the superintendent. Even if some of its provisions transcend constitutional limitations, the title company in the present case was authorized by the contract it made with the holders of the participation certificates to collect the mortgages and interest by foreclosure or otherwise and obtain payment of the interest due thereon, and the legal title to such mortgages stood in its name. It also was given a share in the avails of the mortgages and interest so far as they exceeded the amounts guaranteed. The mere default in meeting the guaranties would not seem to require the title company to rescind the bargain and transfer the mortgages to the owners of the certificates unless they united in the demand. Accordingly when the superintendent, by order of the New York Supreme Court, took over the assets of the title company, it took over a going business, together with a right to administer the mortgages. By virtue of the order and article 11 of the New York Insurance Law (section 400 et seq.), the superintendent became in effect a receiver under the supervision of the state court and the property under his control became in custodia legis. People v. Title & Mtg. Guar. Co., 264 N. Y. 69, 190 N. E. 153; Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487; Matter of Casualty Co. of America, 244 N. Y. 443, 155 N. E. 735; Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 107 N. E. 644; Kline v. 275 Madison Avenue Corporation, 149 Misc. 747, 749, 268 N. Y. S. 582. In such circumstances, under established rules of law, the federal courts should not interfere with the possession of the state court. Lion Bonding Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871; Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457; Farmers' Loan & Trust Co. v. Lake Street Elevated Railroad Co., 177 U. S. 51, 61, 20

S. Ct. 564, 44 L. Ed. 667; O'Neil v. Welch (C. C. A.) 245 F. 261; People's Trust Co. v. United States (C. C. A.) 23 F.(2d) 381. We can see no essential difference between the general character of the statutes under which a department of a state was appointed to manage and liquidate property in Lion Bonding Co. v. Karatz and O'Neil v. Welch, supra, and the statutes involved in the present case, and we hold that here the District Court had no right to intervene.

It may be added that it is impossible for us to see how trustees can be removed, and others appointed, by mere interlocutory orders and without giving them their full day in court; that the suit is in rem and there is the greatest doubt about jurisdiction when the bonds and mortgages seem to be physically within the Southern district of New York. Moreover, it is hard to see how these suits can properly be regarded as on behalf of a class. Doubtless many of the certificate holders do not reside in the Southern district, and it is not shown what certificate holders desire to interfere with the exercise by the superintendent of his duties under the New York statutes. If they do not, and are content to leave the securities where they are, we cannot see how there is any common interest justifying a class suit. Without it, jurisdiction based upon diverse citizenship would be lacking. But if we assume that the details alluded to in this paragraph would have to be developed at final hearing, the District Court should not have interfered with administration by the superintendent acting under the supervision of the state court, and it is upon this ground that we base our decision.

For the foregoing reason, the orders in each suit should be reversed and the bills of complaint dismissed.