In the Matter of the Liquidation of LAWYERS MORTGAGE COMPANY.

WILLIAM E. RUSSELL et al., as Reorganization Managers of Lawyers Mortgage Company, Appellants; LOUIS R. PINK, Superintendent of Insurance of the State of New York, as Liquidator, Respondent.

Argued February 29, 1944; decided July 19, 1944.

*Scott McLanahan* and *Hersey B. Egginton* for appellants. I. The Superintendent, as liquidator, is bound to consider fairly and in good faith, and to submit to the court for its consideration, any reasonable offer made by the reorganization managers for the purchase of assets on behalf of the assenting creditors. No question of discretion of the Superintendent, or of the court, is here involved. (*Vermeule* v. *City of Corning*, 186 App. Div. 206, 230 N. Y. 585; *Matter of the Bank of United States*, 290 N. Y. 279; *Matter of National Surety Company*, 248 App. Div. 111, 272 N. Y. 613.) II. The court has ample power to grant the relief sought by the reorganization managers. (*Matter of Casualty Co. of Am. [Rubin Claim]*, 244 N. Y. 443; *Motlow* v. *Southern Holding & Securities Corporation*, 95 F. 2d 721; *National Bondholders Corp.* v. *Joyce*, 276 N. Y. 92; *Matter of Lawyers Mortgage Co.*, 169 Misc. 802, 256 App. Div. 974.) III. The grounds upon which the Superintendent rests his position are wholly inadequate and untenable.

*Edward F. Keenan, Joseph Lapidus* and *Thomas D. Austin* for respondent. I. The denial of the application at Special Term and the affirmance by the Appellate Division constituted an exercise of discretion which should not be reviewed by the Court of Appeals. (*Matter of Bank of United States*, 290 N. Y. 279.) II. The appellants conceded that there is nothing in the plan which requires the Superintendent to sell or transfer the remaining assets now in his hands to the reorganization managers. (*Matter of Lawyers Mortgage Co.*, 169 Misc. 802, 256 App. Div. 974.) III. The Superintendent of Insurance cannot be compelled to accept an offer involving the creation of

a realization corporation, which he does not approve, upon any theory that he is estopped to oppose the creation of such a corporation. IV. No valid reason exists for a transfer of the remaining assets now in the hands of the Superintendent to the reorganization managers or to a realization corporation. (*Matter of Casualty Co. of Am.* [*Rubin Claim*], 244 N. Y. 443; *Matter of Knickerbocker Life Ins. Co.,* 199 App. Div. 503, 233 N. Y. 604; *Matter of Second Russian Ins. Co.,* 219 App. Div. 46, 244 N. Y. 606.) V. The courts below did not err in refusing to direct the Superintendent to apply for an order which would require him to transfer the assets in his hands to the reorganization managers. (Insurance Law, § 539; *Matter of Union Bank of Brooklyn,* 176 App. Div. 477; *Matter of National Surety Co.,* 248 App. Div. 111, 272 N. Y. 613; *Matter of Lawyers Title & Guaranty Co.,* 254 App. Div. 491.)

*Dominick R. Santomenna* and *Alfred Douglas Olena* for Carrie L. Parsons and another, as executors of George W. Prankard, deceased, *amici curiæ,* in support of respondent's position. I. The court cannot direct the Superintendent to apply to the court for an order authorizing the sale of the assets to the appellants, unless the Superintendent acted unreasonably. (*Matter of National Surety Company,* 248 App. Div. 111, 272 N. Y. 613.) II. The Superintendent has exercised wise discretion in rejecting appellants' offer. III. The rejection of the offer is not contrary to any expressed intention of the creditors.

LOUGHRAN, J. In this proceeding under former article XI (now XVI) of the Insurance Law for the liquidation of Lawyers Mortgage Company, the court approved a plan of reorganization which was adopted by the Superintendent of Insurance as liquidator. Pursuant thereto, the liquid assets were transferred to an "Operating Company" and four "Organization Managers" were appointed with authority to purchase the nonliquid assets for disposal through a "Realization Corporation."

On July 23, 1942, the managers made a written offer to buy the nonliquid assets for $4,909,000 and thereupon requested the Superintendent to apply to the court for approval thereof. When he refused, they moved for an order directing him to petition the court for sanction of the sale contemplated by their offer. By

our leave, they have appealed to us from an affirmance of the denial of that motion.

In liquidating a delinquent insurer, the Superintendent of Insurance acts as a statutory receiver,— not as a receiver for the court. (*Matter of People* [*Tit. & Mtge. Guar. Co.*] 264 N. Y. 69.) Section 539 of the Insurance Law says that as liquidator the Superintendent may sell or otherwise dispose of the property of a delinquent insurer " subject to the approval of the court " (so, former § 421). The meaning of this is that the court may veto such action of the liquidator but cannot compel it. (*Matter of Casualty Co. of Am.* [*Rubin Claim*], 244 N. Y. 443, 449.) When it was the idea that assets in the keeping of a liquidator were to be disposed of only on an order of the court, the Legislature has had no difficulty in plainly saying so. (*Matter of Bank of the United States,* 290 N. Y. 279, 284.) We do not find in the cited statute any warrant for the notion that the Superintendent was bound to act upon the offer in question.

Nor is any warrant therefor contained in the plan of reorganization. The provision for transfer of the liquid assets to the " Operating Company " required that the Superintendent should " apply to the court for an order " to that end. Such a direction is missing from the provision for disposition of the nonliquid assets. In that connection, the plan says that " the Reorganization Managers shall request the Superintendent of Insurance to apply * * * for an order authorizing the sale * * * at a price and on terms satisfactory to him and approved by the court." Thus the parties to the plan appear to have deliberately excluded the duty which the managers would now have us put upon the Superintendent.

Though his refusal to consider their offer is not for us to question, his reasons therefor should be noticed. He said: " Since the date of reorganization in 1937, all claims against the company have been determined and a 15% liquidating dividend has been paid to creditors of the company. We are continuing to liquidate the assets as expeditiously as possible and there is no point in now transferring this work to a new corporation." The managers express distrust respecting the good faith of such an attitude but their concern in that regard does not make any question of law.

The order should be affirmed, with costs.

THACHER, J. (dissenting). On August 2, 1933, the Superintendent of Insurance was directed to take possession of the property of Lawyers Mortgage Company for the purpose of rehabilitating it. By virtue of this order he was authorized and directed to take such steps toward the removal of the causes and conditions which had made the rehabilitation proceedings necessary " as the court shall direct " (Insurance Law, former § 402). Pursuant to this statutory authority, and upon his suggestion, a committee of creditors was designated at a meeting of creditors called by a Special Deputy Superintendent of Insurance in charge of these rehabilitation proceedings. Many months were spent by this committee in studying the situation and in formulating a plan for the reorganization of Lawyers Mortgage Company. Thereafter, with the approval of the Superintendent, the court appointed a referee for the purpose of conducting hearings upon the plan proposed by the committee and such modifications or other plans as might be submitted for the consideration of the creditors, stockholders and those otherwise interested, including a plan proposed on a companion motion by counsel representing interested parties. (*Matter of Lawyers Mortgage Co. [No. 2]*, 158 Misc. 579.) Amendments to the committee plan were later proposed and approved.

Many hearings were had before the referee and many conferences of attorneys, of the Superintendent of Insurance, the Mortgage Commission and various creditors and stockholders, and it was through participation in these conferences with the Superintendent of Insurance and others that the differences between the parties in interest were finally crystallized and to a great extent eliminated.

After hearings, upon due notice to all parties interested, an order was made by the court under date of September 14, 1937, approving the plan of reorganization recommended by the referee, assuming jurisdiction of the reorganization proceedings and appointing four reorganization managers to supervise the carrying out and consummation of the provisions of the plan. At these hearings, counsel for the Superintendent appeared, raised no objections to the plan and did not question the desirability of its approval. The structure of the plan is indicated by the principal duties imposed upon the reorganization managers, which were four in number:

(a) the solicitation of assents to the plan from creditors and stockholders;

(b) the purchase, when sufficient assents had been obtained, from the Superintendent of Insurance of an operating company which had been organized by him and to which liquid assets had been transferred so that it might continue the business of the company in reorganization;

(c) filing and proving before the Superintendent as liquidator of the claims of assenting creditors, the number of which finally amounted to approximately 20,000 separate creditors, holding the amount of approximately 55,000 separate claims, which were finally allowed in the principal amount of over $37,000,000, and

(d) the purchase of nonliquid assets remaining in the hands of the Superintendent of Insurance and the management and liquidation thereof for the benefit of the assenting creditors.

All of the first three of these principal duties of the managers have been successfully accomplished. The operating company was purchased and taken over by the managers on behalf of the assenting creditors as contemplated, after an order had been entered declaring the plan of reorganization operative and effective and after the validity of the plan and the jurisdiction of the court had been sustained in contested proceedings before the court. The managers now represent over 85% of all the creditors.

With reference to the fourth principal duty of the managers, with which we are concerned in this proceeding, it was provided: "TENTH: After the Plan of Reorganization shall have been declared effective, the Creditors' Managers shall determine when a sufficient number of claims filed in the liquidation proceeding have been finally allowed so as to indicate with reasonable certainty the total amount of claims that will be finally allowed against Lawyers Mortgage Company. Thereupon the Creditors' Managers shall request the Superintendent to apply, upon reasonable notice to such parties as the Court may direct, for an order authorizing the sale, in bulk or otherwise, of all or part of the assets of Lawyers Mortgage Company, (except (a) the capital stock of Lawyers Mortgage Guarantee Corporation, the reclassified stock of that company or the Voting Trust Certificates representing the same and (b) such amount of cash or other assets as may be estimated by the Superintendent, and

approved by the Court, to be required for the payment of his expenses and of trust claims), at a price and on terms satisfactory to the Superintendent and approved by the Court. * * * The Creditors' Managers shall apply in payment for any such assets purchased by them, the claims assigned to them at their dividend or distribution value, or for that purpose and upon the prior approval of the Court they may borrow money, secure said loans by the pledge of said claims, or otherwise, and to that end may make, execute and deliver any instruments considered necessary or requisite to effect that result.''

The provisions of the plan relating to the proof and allowance of claims required the reorganization managers to apply to the court for an order to liquidate the Lawyers Mortgage Company pursuant to article XI (now article XVI) of the Insurance Law. This was done and an order of liquidation was entered. In his application for the order of liquidation the Superintendent referred to proceedings which culminated in the adoption of the plan of reorganization and to the order confirming the report of the referee and approving the plan; also to the fact that the plan contemplated an early determination of creditors' claims '' and utilization of the assets of Lawyers Mortgage Company in payment thereof ''. He referred also to the request received from the reorganization managers to make the application for the order of liquidation and to '' incorporate in the order of liquidation appropriate provisions referring to the Reorganization Plan and continuing the Court's jurisdiction over the Reorganization Managers, the Reorganization Plan and the reorganization proceedings until the ultimate consummation thereof.'' He then stated: '' Application is therefore made by your petitioner for such relief '', and his prayer for relief was in conformity with these statements. The order of liquidation dated November 17, 1937, was granted by the court in connection with and principally for the purpose of implementing the plan of reorganization so that the identity of creditors and the amount of their claims might be definitely established and the carrying out of the plan thereby facilitated. There was no other proceeding, except pursuant to an order of liquidation, whereby the identity and claims of creditors could have been established, and, without a determination as to the identity of creditors and the exact amounts of their respective claims, obviously no reorganization was possible.

The order of liquidation expressly provided " that the Superintendent of Insurance of the State of New York and his successors in office, as Liquidator of Lawyers Mortgage Company, be and he is and they are hereby authorized and directed to proceed with any and all matters contemplated in or provided for by said Plan of Reorganization until such time as the Court shall otherwise direct."

Proceeding precisely in accord with the provisions of the plan for the purchase by the reorganization managers in behalf of the assenting creditors of the assets remaining in the hands of the Superintendent, the reorganization managers made an offer for the purchase of these assets of over $4,900,000, payment to be made in cash or as provided in the provision of the plan above quoted. The Superintendent of Insurance, without giving any consideration to the adequacy of this offer, declined to entertain it because, in derogation of the plan of reorganization approved by the court with his concurrence, he has since decided that the purchase should not be made in behalf of the assenting creditors. The basis of the Superintendent's objection is that such a sale will merely transfer the duties of liquidation from the Superintendent of Insurance to the realization corporation and this he regards as undesirable.

The justice at Special Term went so far as to say: " While in form the offer is one to purchase assets, in reality the object sought to be obtained is the transfer from the Superintendent of Insurance to a Realization Corporation to be managed by Realization Agents, of the duty of liquidating these assets. It calls for the substitution of the judgment of Realization Agents for that of the State Superintendent of Insurance." This is the basic error underlying the decision of the courts below and of the Superintendent.

The same contention was unsuccessfully made by an objecting creditor in the reorganization proceeding and there successfully opposed by the Superintendent of Insurance. (*Matter of Lawyers Mortgage Co.*, 169 Misc. 802, 816, affd. 256 App. Div. 974.) In that proceeding the court carefully analyzed the provisions of the plan and demonstrated that the plan provided for a sale, by the Superintendent of Insurance at prices satisfactory to him and approved by the court as fair and reasonable to all concerned, of the stock of the Lawyers Mortgage Company and

of the remaining assets, and said: " The court is accordingly unable to perceive how the plan of reorganization may be said to call for an unlawful surrender by the Superintendent of Insurance of his statutory duty to liquidate. The plan *does* provide for liquidation *by the Superintendent* of part of the assets in one sale and for the further liquidation by him of various assets from time to time as steps in the reorganization, if, as and when he elects to sell. It contemplates, however, that, instead of selling assets to strangers, he will sell them to the creditors and stockholders of the company in liquidation, at least to those creditors and stockholders who wish to become purchasers. It is not the purpose of the plan to give such creditors and stockholders a bargain by letting them acquire the assets for less than they are worth. The price, as repeatedly stated above, must be approved by the court as fair, just as if the sale were to outsiders. In fact, there is nothing in the plan which precludes the Superintendent of Insurance from selling the other assets to third parties if he elects so to do " (p. 823).

Upon this record it must be concluded that the Superintendent, the court, the managers and those interested who assented to the plan contemplated that the Superintendent in making such an election would, in view of his duties as liquidator, consider the adequacy of the purchase price offered by the managers representing the assenting creditors. This he has absolutely refused to do, misconceiving and characterizing the offer made under the express terms of the plan of reorganization as designed merely to transfer the duty of liquidation from himself to the reorganization managers.

We come, then, to the power of a court of equity to deal with this situation. Prior to the enactment in 1909 of section 63 of the Insurance Law (repealed by L. 1932, ch. 191, and re-enacted in article XI of the same statute), the Supreme Court undoubtedly possessed all of the inherent powers exercised by a court of equity in the reorganization of corporations generally, including insurance companies. (*Clinton Trust Co.* v. *142–144 Jeralemon Street Corp.*, 237 App. Div. 789; *Chase Nat. Bank* v. *10 E. 40th St. Corporation*, 238 App. Div. 370.) There is nothing in the Insurance Law, providing for the office of Superintendent of Insurance and defining his powers, which discloses any purpose whatever to withdraw the inherent powers of a court of

equity in the control of insolvent corporations, including insurance companies. The obvious purpose was to impose responsibility and authority in the Superintendent in connection with the rehabilitation and liquidation of insurance companies under the supervision of the court, by which we may understand that the Legislature intended to continue the powers of supervision theretofore exercised. Repeated provisions in section 63 of the Insurance Law, and in the later article XI which took its place, require approval by the court before the Superintendent may act in any important matters. Our own decisions emphasize the court's power of " supervision and direction of the course of liquidation " (*Matter of Casualty Co. of Am.* [*Rubin Claim*], 244 N. Y. 443, 449, 451). In that case, Chief Judge CARDOZO said of section 63: " Terms more distinct than any to be found in this enactment must stamp him [the Superintendent] a judge before the courts will be shorn of the power of supervision that would otherwise be theirs." We are now told upon the asserted authority of this case that the court may veto but may not compel action by the Superintendent, although the fact in that case was that the Superintendent fixed a fee for legal services at $3,000 and this court compelled him to pay $8,000.

The inherent equitable powers of supervision over the liquidation and reorganization of corporations, including insurance companies, comprehend the consideration of advantageous sales in liquidation of the assets and, insofar as any sales are concerned, former section 421 of the Insurance Law authorizes the Superintendent, as liquidator of an insurance company under former section 404, to sell the assets " subject to the approval of the court ". Since this power is expressly subject to the approval of the court it is no broader than the power of the Superintendent of Banks. The only difference between the language of former section 421 of the Insurance Law and the language of section 618 of the Banking Law is that the former uses the expression, " subject to the approval of the court " and the latter, the expression, " upon an order of the supreme court ". It is true that the Superintendent becomes a statutory receiver in the sense that he is named by the statute and not by the court, but the property of the corporation is brought into the protective arm of the law and the receiver is subject to directions of the court except insofar as discretionary power is vested by

the Legislature in him. (*Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69, 80–81.)

" The conduct of the liquidation is subject in all its phases to the supervision and control of the court, except in so far as the Legislature may have vested discretionary power in the Superintendent. Save for this, the court in its discretion, may veto the acts of the Superintendent as liquidator, and is vested with a discretion which may override that of the Superintendent." (*National Bondholders Corp.* v. *Joyce*, 276 N. Y. 92, 96.)

The same rule applies to the Superintendent of Banks: " We have said that the Superintendent of Banks is in effect a statutory receiver, yet for some purposes the assets in his hands may be regarded as ' *in custodia legis*.' (*Lafayette Trust Co.* v. *Beggs*, 213 N. Y. 280.) The court may not substitute its discretion for his own where the statute leaves discretion to him. There still remains a field within which the court is supreme."

This was said in *Isaac* v. *Marcus* (258 N. Y. 257, 268–269) and, applying this rule, the court there said:

"Perhaps the court may not direct him to bring an action if in his discretion it would not be for the best interests of the banking corporation. That we do not now decide. At least it can issue an order to show cause why he should not bring such an action, or why a stockholder should not be permitted to protect the rights of stockholders by instituting the action vested in him.

" Upon the return of such an order the court can determine whether the Superintendent of Banks is willing and able to protect those rights or whether the equitable jurisdiction of the court may be invoked by the stockholder."

In the recent case of *Matter of Bank of United States* (290 N. Y. 279) the Superintendent of Banks procured an appraisal of certain securities of $750,000. He talked to representatives of prospective buyers, all of whom were told that the Superintendent expected to obtain $750,000. Bidders were told to make their highest offers because they would have no further opportunity to bid and no bid from one bidder would be disclosed to any other bidder. One bidder made an offer in writing of $650,000, stating that his client did not consider the securities worth $750,000. Another was induced to submit a bid for $751,501, which was far the highest bid. The Superintendent of Banks informed the bidder that its offer was acceptable. When the

Superintendent asked the court to approve the offer the court held an auction sale and the unsuccessful bidder who had previously bid $650,000 raised his offer above the successful bidder, whereupon the court rejected the Superintendent's petition for approval of the sale, which this court said had been fairly conducted and in accordance with the procedure devised by the Superintendent because in his opinion the best price for the securities would be obtained upon a sale so conducted. In reviewing this judicial exercise of power over sales by the Superintendent of Banks, this court said:

" If the court has no power except to review the exercise of a discretionary power conferred by the Legislature upon an administrative officer, forcible argument could be made that the court has exceeded its power.

" In truth, however, the power conferred by the Legislature upon the court is far greater. The Superintendent is authorized to sell, or dispose of, the assets of the bank only ' upon an order of the Supreme Court.' (Banking Law, § 618.) In making such an order the function of the court is not confined to review of a determination previously made by the Superintendent in the exercise of an administrative discretion vested in him. The court exercises its own discretion, and since the Appellate Division has affirmed the order of the court, we have no power to review the exercise of that discretion." (p. 284.)

In this case neither the Superintendent nor any court has exercised any discretion with regard to this proposed purchase of assets for a price of approximately $5,000,000.

The orders should be reversed and the petitioner's motion granted to the extent of directing the Superintendent of Insurance, as liquidator of the company, to consider the adequacy of the offer made by the reorganization managers and thereafter to show cause why an order should not be made and entered herein directing the Superintendent to accept said offer if within a reasonable time no more advantageous offer is received.

LEHMAN, Ch. J., RIPPEY, LEWIS and DESMOND, JJ., concur with LOUGHRAN, J.; THACHER, J., dissents in opinion in which CONWAY, J., concurs.

Order affirmed.