Richard L. MATHIAS, as Director of
Insurance of the State of
Illinois, Plaintiff,

v.

John F. LENNON, as Rehabilitator of Empire Mutual Insurance Company, James W. Dowling, as Agent of the Rehabilitator of Empire Mutual Insurance Company, and Empire Mutual Insurance Company, a New York corporation, Defendants.

No. 77 Civ. 4763.

United States District Court,
S. D. New York.

Aug. 15, 1979.

William J. Scott, Atty. Gen. of the State of Illinois, Gerald D. Mindell, Sp. Asst. Atty. Gen., for the State of Illinois, Chicago, Ill., for plaintiff; Isham, Lincoln & Beale, Chicago, Ill., Layton & Sherman, New York City, of counsel.

Shea, Gould, Climenko & Casey, New York City for defendants; Michael Lesch, John B. Grant, Jr., New York City, of counsel.

LASKER, District Judge.

This action arises out of the insolvency of Empire Mutual Insurance Company, a company incorporated and having its principal place of business in New York State. Richard L. Mathias, the Director of Insurance of the State of Illinois, sues on behalf of all

Illinois policyholders of Empire, asserting that actions taken by the Rehabilitator of Empire have discriminated in favor of New York policyholders at the expense of Empire's Illinois insureds, in violation of New York and Illinois insurance law and numerous provisions of the federal Constitution. The defendants move to dismiss the complaint under Rule 12(b), Fed.R.Civ.P., for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## I. Background

The bulk of Empire's business is conducted in New York State; the complaint estimates that approximately 250,000 (80%) of Empire's outstanding insurance contracts are issued to New York residents. However, Empire is also authorized to do business in other states, including Illinois where, as of August of 1977, it had issued 2,553 policies, primarily to cover automobile and fire loss. (FAC ¶ 17) * Mathias estimates that claims from Illinois policies represent $1,100,000 of Empire's gross liabilities for loss reserves and that the unearned premiums on these policies amount to $400,000. (FAC ¶ 18)

There is no dispute as to Empire's dire financial condition. As of December, 1976, Empire's capital impairment approximated $13 million. On August 30, 1977, John F. Lennon, New York State's Superintendent of Insurance, petitioned in New York State Supreme Court for an order, pursuant to Article XVI of New York's Insurance Code, N.Y.Ins.Law §§ 510–546, appointing him Rehabilitator of Empire. On August 31st, Justice Sidney H. Asch of the Supreme Court, New York County, issued an order which, inter alia, adjudged Empire to be insolvent; appointed Lennon Rehabilitator of the company with authority to control its assets and conduct its business; and provided that all insurance contracts held by policyholders outside of New York State be cancelled as of October 7, 1977. (Ex. 2 to the FAC)

Notice of the proposed cancellations was mailed to all policyholders affected by the order on September 26, 1977. On September 30th, Mathias moved this court by order to show cause for a preliminary injunction barring Empire from proceeding with the cancellations as to the Illinois policyholders. The application was denied in an oral decision because of this court's serious doubts as to the existence of diversity jurisdiction—upon which the bulk of the complaint was based; as to whether the relief requested was not prohibited by 28 U.S.C. § 2283 (the "antiinjunction statute"); and because principles of comity rendered it inappropriate to issue an order directly contradicting the decree of the state court. (Transcript of October 7, 1977, pp. 4–7)

Since the decision on October 7, 1977, Mathias has amended his complaint to eliminate one count and base each of the remaining counts on both federal question and diversity jurisdiction. Defendants now move to dismiss the amended complaint.

## II. Issues Raised by the Complaint

In the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, Congress entrusted the regulation of insurance to the individual states. Id. § 1012. The claims made in the complaint here arise out of several of these state regulatory schemes, including the New York and Illinois Insurance Codes as well as the Uniform Insurers' Liquidation Act (the Uniform Act), which has been adopted by both states.

As a condition to obtaining a Certificate of Authority to do business in Illinois, Empire agreed to conduct its business in compliance with Illinois' insurance laws. The Illinois Insurance Code, the complaint alleges, prohibits cancellation of policies extending automobile or fire insurance except upon certain enumerated grounds—none of which is applicable to the cancellation here—and sets out minimum procedural requirements as a precondition to a valid termination. See Ill.Rev.Stat. ch. 73, §§ 755.11–755.24. In addition to these safeguards, Illinois policyholders are protected by the

* "FAC" refers to the First Amended Complaint.

provisions of the Uniform Act which, Mathias alleges, require equal treatment for policyholders of any insurer placed in a "delinquency proceeding"[1] when those policyholders are located in a "reciprocal state", that is, one which has enacted the uniform law. *Id.* §§ 833.1–833.13.

New York, the complaint continues, has at all times relevant to the events in question here had in effect the Uniform Act as part of its own insurance law, see N.Y. Ins.Law §§ 517–24, and therefore New York and Illinois are "reciprocal states" whose citizens are entitled to equality of treatment. Mathias relies specifically on § 522(1) of New York's Insurance Law which provides that:

> "In a delinquency proceeding against an insurer domiciled in this state, claims owing to residents of ancillary states shall be preferred claims if like claims are preferred under the laws of this state. All such claims whether owing to residents or nonresidents shall be given equal priority of payment from general assets regardless of where such assets are located."

The amended complaint seeks a declaration that defendants' "preferential and discriminatory" action in cancelling the contracts of Illinois policyholders violates the above provisions of New York and Illinois insurance law; the Uniform Act, the Full Faith and Credit and Privileges and Immunities Clauses of Article IV of the United States Constitution; and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. In addition, the complaint seeks a permanent injunction prohibiting any acts of preferential treatment of New York, as compared to Illinois, residents, and barring defendants from terminating any policies in effect in Illinois except in accordance with the procedural requirements of Illinois law.

### III. *The Motion to Dismiss*

The motion to dismiss rests on a multiplicity of arguments, most of which were raised earlier in opposition to Mathias' application for a preliminary injunction. Briefly stated, the Rehabilitator contends that various jurisdictional barriers prevent this court from considering the dispute, including (a) the state court's exclusive jurisdiction over the subject matter of the complaint; (b) the doctrine of abstention; and (c) lack of diversity jurisdiction. Defendants also assert that the complaint fails to state a claim upon which relief can be granted because, *inter alia,* (a) the injunctive relief requested is barred by 28 U.S.C. § 2283; (b) principles of comity and Full Faith and Credit require deference to the state court decree; and (c) the rehabilitation order issued by the state Supreme Court does not give preferential treatment to New York residents as alleged. In the event the motion is denied, defendants seek a stay of this action "pending a determination of the state court".

### A. *Subject Matter Jurisdiction*

Defendants contend that the state court has exclusive jurisdiction over the subject matter of this dispute. They rely on a long line of cases holding that, when two lawsuits with substantially the same purpose are instituted in separate courts, the second court to acquire jurisdiction must, under certain circumstances, relinquish jurisdiction to the first. See *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936); *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922).

The rule articulated in *Bank of New York* can be analogized to the doctrine of abstention: that is, it deals not with the question whether a court has jurisdiction *ab initio* to consider a claim but whether a court of concurrent jurisdiction should defer the exercise of its jurisdiction in favor

---

1. A delinquency proceeding is defined by the Uniform Act to include any proceeding commenced against an insurer for the purpose of "liquidating, rehabilitating, reorganizing or conserving such insurer", Illinois Rev.Stat. ch. 73, § 833.1(3).

of another court.[2] Therefore plaintiff's argument that the action may proceed because a colorable constitutional claim has been pleaded, which endows this court with jurisdiction under 28 U.S.C. § 1331, *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), see also *Hagans v. Lavine,* 415 U.S. 528, 534–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), does not squarely meet defendants' contention on this point: that is, that this court should defer.

The purpose of the rule of *Bank of New York* is to prevent the "unseemly and disastrous conflicts" which may arise when two *in rem* proceedings requiring control over the same property are brought concurrently. *Penn General Casualty, supra,* 294 U.S. at 195, 55 S.Ct. 386. As the Supreme Court stated in *Kline v. Burke Construction Co., supra,* 260 U.S. at 229, 43 S.Ct. at 81:

"Where the action is *in rem* the effect is to draw to the federal court the possession or control, actual or potential, of the *res,* and the exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction."

However, if one of the two actions seeks only *in personam* relief, under traditional principles, both actions may proceed:

"Where the judgment sought is strictly *in personam,* for the recovery of money or for an injunction compelling or re-

straining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as *res adjudicata* in the other."

*Penn General Casualty Co., supra,* 294 U.S. at 195, 55 S.Ct. at 389.

The complaint here seeks a declaration that defendants' conduct is in violation of state and federal law and injunctive relief requiring the Rehabilitator to grant Illinois policyholders the same rights and preferences accorded New York residents. The action is thus formally brought *in personam,* seeking an adjudication of rights in property rather that a direct distribution of the *res,* and under a literal construction of *Penn General* should be allowed to proceed.

Defendants argue, however, that even an *in personam* action will be barred if it interferes with state courts *in rem* proceedings for rehabilitation or liquidation of an insurance company. They rely primarily on two lower court decisions. *Motlow v. Southern Holding & Securities Corp.,* 95 F.2d 721 (8 Cir. 1938); *Superintendent of Ins. v. Bankers Life & Cas. Co.,* 401 F.Supp. 640 (S.D.N.Y.), *aff'd mem.* 526 F.2d 586 (2d Cir. 1975).[3]

In *Motlow,* a creditor of an insolvent insurance company brought an action in federal court against third parties whom he alleged had secured fraudulent transfers of the insurance company's assets. The Court of Appeals for the Eighth Circuit affirmed dismissal of the complaint on the ground that supervision of the administration of an insolvent insurance company was within the exclusive jurisdiction of the state court en-

---

**2.** Thus the Supreme Court described the rule in an early case in the following manner:

"The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons."

*Farmers' Loan and Trust Co. v. Lake St. Elevated R. R.,* 177 U.S. 51, 61, 20 S.Ct. 564, 568, 44

L.Ed. 667 (1900). See also C. Wright, *The Law of Federal Courts,* § 52 at 227–28 (3d ed. 1976).

**3.** Both of these cases concern the liquidation of an insolvent insurance company. However, in *Tolfree v. New York Title & Mortgage Co.,* 72 F.2d 702 (2d Cir.), *cert. denied,* 293 U.S. 619, 55 S.Ct. 216, 79 L.Ed. 707 (1934), the Court of Appeals for this Circuit applied the rule of jurisdiction in question here to the rehabilitation process. The court found "no essential difference" between the general character of the rules governing liquidation and rehabilitation. *Id.* at 704.

tering the order that the company be liquidated. The court found:

> "Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit.of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies . . ." 95 F.2d at 725–26.

In *Superintendent of Insurance v. Bankers Life, supra,* 401 F.Supp. 640, the New York Superintendent of Insurance, acting as liquidator of an insolvent insurance company, brought a federal securities claim in federal court on behalf of the company. The Superintendent subsequently settled the claim, and the terms of the settlement were approved by the state court supervising the liquidation process. Upon motion by intervenors in the federal action to disapprove the settlement agreement, the federal court held that the state court alone had jurisdiction to adjudicate the validity of the settlement. The court stated that:

> "The interest at stake in the management and liquidation of insurance companies such as Manhattan is exclusively a state interest. Federal public policy is found only in the acts of Congress and in federal court decisions. In none of these do we find any conflicting or overriding policy of a federal nature which interferes with the state's activities in regulating the insurance industry or the administration of defunct insurers, or preventing the state's liquidator from compromising any civil claim."

■ These two decisions therefore appear to go beyond the simple *in rem/in personam* dichotomy set out in *Penn General.* Whether they alone dictate that the complaint in this action be dismissed we do not decide. What they do emphasize is the powerful interest of the state in the regulation of the insurance industry, a factor of controlling significance here which dictates that this court should abstain from interfering in the state rehabilitation proceedings.

## B.   Doctrine of Abstention
### Burford Abstention

■ At least three different branches of the doctrine of abstention are relevant to this case. Foremost among them is the rule of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), that a federal court will not intervene in an area already occupied by a complex state regulatory apparatus. In *Burford,* an oil company sued in federal court to enjoin implementation of an order of the Texas Railroad Commission authorizing Burford to drill for oil in an East Texas oil field. In determining whether the District Court was correct in declining to exercise jurisdiction over the dispute, the Supreme Court considered the expertise of the Railroad Commission and the state courts in supervising oil and gas allocation, the magnitude of the state's economic interest in the resources involved and the importance of uniform decision-making in the area. The Court concluded that the very confusion which the Texas legislature and courts had struggled to avoid by establishing a discrete regulatory apparatus would result from the exercise of federal equity jurisdiction in this field:

> "As a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the Texas statutes provide. Texas courts can give fully as great relief, including temporary restraining orders, as the federal courts. Delay, misunderstanding of local law, and needless federal conflict with the state policy, are the inevitable product of this double system of review." *Id.* at 327, 63 S.Ct. at 1104.

Accordingly, out of a "sound respect for the independence of state action" the Court held that the complaint should be dismissed. *Id.* at 334, 63 S.Ct. at 1167.

*Burford* abstention has been applied in numerous areas of state concern,[4] including regulation of insurance. In *Meicler v. Aetna Casualty and Surety Co.,* 372 F.Supp. 509 (S.D.Tex.1974), *aff'd,* 506 F.2d 732 (5th Cir. 1975), the District Court applied *Burford* to a federal class action against Texas automobile insurers who were alleged to have reclassified plaintiffs into higher risk categories in violation of the federal antitrust laws and the federal Constitution. Although the court found that the statutory claims fell within the antitrust exemption to the McCarran-Ferguson Act, and could therefore be raised before a federal court, it dismissed the constitutional claims to permit the Texas Insurance Board and the state courts to consider them. While recognizing that automobile liability insurance could "hardly be classified as a great natural resource", the court found the issue before it similar to that presented in *Burford:*

> "The State Board of Insurance stands in much the same position as the Railroad Commission. Just as the Railroad Commission regulates the oil and gas industry, the Insurance Board is charged with regulating and protecting both the public and private interests involved in the automobile liability insurance industry. . .

> "Thus, under the guidance of *Burford, supra,* this Court thinks it proper to invoke the doctrine of equitable abstention in order to avoid unnecessary friction with the State of Texas over the administration of its basic automobile liability insurance policy." *Id.* at 515.

Here, too, the state has a regulatory mechanism governing domestic insurance companies. Indeed, an experienced state official has already begun the rehabilitation of Empire under the supervision of the state court. Moreover, the particular proceeding involved, rehabilitation of an insolvent insurance company, is one which would almost certainly be jeopardized if subjected to inconsistent directions. These circumstances, together with Congress' explicit determination in the McCarran-Ferguson Act, 15 U.S.C. § 1012, that the regulation of insurance be entrusted to the states, dictate that the complaint here should be dismissed[5] to permit resolution of the dispute through the available state apparatus.

### Pullman Abstention

A second branch of the abstention doctrine supports the conclusion that this court should defer to the state proceedings. The rule of *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), applies to cases in which state action is challenged in federal court on federal constitutional grounds but difficult questions of state law are also raised which may be dispositive of the action. The Supreme Court held in *Pullman* that, rather than issue a "tentative answer" to the state law question "which may be displaced tomorrow", *id.* at 500, 61 S.Ct. 643, the federal court should abstain from deciding the case until the parties are able to obtain a decision from the state court on the state law question.

The complaint here falls within the traditional *Pullman* framework. Mathias alleges that the cancellation of the Illinois policies violates both New York and Illinois law. If he is correct, the numerous constitutional arguments raised in the complaint need not be considered. Not only would the New York court's decision have special authority on questions of New York law, but it undoubtedly possesses greater experience

---

4. See *Alabama Public Service Commission v. Southern Ry. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (abstention in area of state regulation of local transportation); *Kelly Services, Inc. v. Johnson,* 542 F.2d 31 (7th Cir. 1976) (abstention from interference with state regulation of employment agencies); *Tonwal Realties v. Beame,* 406 F.Supp. 363 (S.D.N.Y.1976) (abstention in area of city rent control statute).

5. Since the purpose of *Burford* abstention is to prevent federal interference in an area properly regulated by the state, abstention on this ground calls for dismissal of the complaint rather than simply a stay of the federal action pending a determination by the state.

in dealing with the highly technical insurance statutes involved here. Moreover, as defendants point out, the particular questions presented appear to be ones of first impression under both New York and Illinois law. Despite lengthy discussions of the merits of the dispute, neither party has referred to state cases directly interpreting the issues in question here. Accordingly, it is appropriate to permit the parties to seek a determination in state court of the state law questions involved.

### Abstention under Juidice v. Vail

■ The preceding principles, neither of which is dependent on the prior institution of a state court action, are sufficient to justify dismissal of the complaint. However, the fact that the relief requested here interferes with an ongoing state court proceeding is further reason for this court to abstain.

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), sets out the doctrine that a federal court will not entertain an action challenging state law on federal constitutional grounds when the state has already instituted proceedings in state court to enforce its law, and the federal plaintiff is able to raise his claims in that forum. Although *Younger* involved a federal challenge to a state criminal proceeding, the rationale of that case has been recently held to apply to civil proceedings as well. In *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Supreme Court reversed the issuance of a federal injunction against implementation of New York's statutory contempt procedure, holding that "the more vital consideration" behind *Younger*'s rule of nonintervention lay not in its impact on the state's criminal process but in the notion of comity, "that is, a proper respect for state functions . . . ." *Id.* at 334, 97 S.Ct. at 1217. The Court noted that:

"A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims

within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, *Younger, supra,* or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman [v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)], *supra.* But we think it is of sufficiently great import to require application of the principles of those cases. . . . Moreover, such interference with the contempt process not only 'unduly interfere[s] with the legitimate activities of the Stat[e],' *Younger, supra,* 401 U.S. at 44, 91 S.Ct. at 750—but also 'can readily be interpreted "as reflecting negatively upon the state court's ability to enforce constitutional principles," ' " *Id.* at 335–36, 97 S.Ct. at 1217–18.

Similarly, in *Trainer v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), *Younger* abstention was applied to a state civil proceeding, in which the Illinois Department of Public Aid had charged welfare recipients with fraudulent concealment of assets. The Court again emphasized the "more vital consideration" of comity embodied in *Younger*:

"namely, that in a union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts." *Id.* at 441, 97 S.Ct. at 1916.

■ Although it is not necessary, in light of the applicability of other grounds for abstention, to rely specifically on the doctrine of *Younger* and *Juidice,* the notions of comity and federalism set out in those decisions certainly are relevant here. The fact that this case seeks to enjoin a ruling in a pending state proceeding, brought by a state official, implicating an important state concern and in which Mathias is fully able to raise the constitutional claims made here strongly supports the conclusion that the complaint should be dismissed.

### C. Jurisdiction of the State Rehabilitation Court

Mathias contends that it is inappropriate to defer to the state court because that court lacked jurisdiction to affect the property interests of the Illinois policyholders. This argument does not affect the outcome here since the abstention considerations of *Burford* and *Pullman* are applicable regardless of whether a prior state proceeding has been instituted. However, we note briefly our disagreement with plaintiff's position.

 Mathias concedes that the rehabilitation court had *in rem* jurisdiction over the assets of Empire. (Memorandum in Opposition, p. 35) However, he contends that the personal property rights of the out-of-state policyholders in their insurance contracts could not be extinguished absent *in personam* jurisdiction over the Illinois insureds. Nevertheless, we believe that the state court's undisputed control over the assets of Empire necessarily gave it the authority to prevent dissipation of those assets by ordering the Rehabilitator to terminate payments on out-of-state policies. Accordingly, in light of this uncontested control over the *res,* whether or not the state court had *in personam* jurisdiction over the Illinois insureds appears beside the point.

### IV. Conclusion

The motion to dismiss raises numerous other points, including persuasive arguments as to whether this court lacks diversity jurisdiction, whether the relief requested is barred by 28 U.S.C. § 2283, and whether the complaint should be dismissed out of comity with the state court's order. This decision, however, is based on the principles of abstention outlined above, which dictate that, in an area of such substantial state concern and expertise as the regulation of insurance, Mathias is required to seek relief in the proceedings already instituted before the state court.

Abstention does not invariably require that an action be dismissed. Here, however, where the reason for abstention is in large part to avoid conflict with the state's regulatory apparatus, the appropriate procedure is to dismiss the complaint rather than simply stay the action pending a disposition in the state courts. *Burford, supra,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424. This procedure in no way prejudices resolution of Mathias' federal claims which may be raised in state court, with ultimate review resting in the United States Supreme Court.

The motion to dismiss is granted.

It is so ordered.