**ARNAV INDUSTRIES, INC., Plaintiff,**

v.

**Bernard DRESKIN, Defendant.**

**No. 82 Civ. 5006 (GLG).**

United States District Court,
S.D. New York.

Nov. 22, 1982.

J. Michael Gottesman, New York City, for plaintiff.

Thomas Urgo, Brooklyn, N.Y., for defendant.

## OPINION

GOETTEL, District Judge:

There are those who believe that diversity jurisdiction, 28 U.S.C. § 1332(a) (1976), is a safeguard that has outlived its usefulness and provides a basis for diverting matters into the federal courts that properly belong in the state courts. Indeed, hardly a year passes without legislation being proposed to eliminate diversity jurisdiction. This action, a landlord-tenant dispute concerning New York State's complex rent stabilization laws, brought against a New Jersey individual by a New York corporation which hopes to avoid an adverse determination by the appropriate state administrative board, certainly provides support for those who argue that diversity jurisdiction is being misused.

On February 15, 1979, the plaintiff, Arnav Industries, Inc. ("Arnav"), and the defendant, Bernard Dreskin, entered into a lease for an apartment in New York City. At the same time, Mr. Dreskin signed a sworn statement that he was a legal resident of New Jersey and would be renting the apartment as a secondary resident. Mr. Dreskin's daughter, Debra Dreskin, a New York resident, was present at the signing of the lease, for the apartment was, in fact, to be occupied and paid for by her. Since the execution of the lease, Ms. Dreskin has always been the sole resident of the apartment and payer of the rent.

Two years later, in February of 1981, the lease was renewed and Arnav substantially increased the rent. Not long thereafter, Ms. Dreskin realized that her rent was considerably higher than that of her neighbors. She then asked Arnav for a rent history of the apartment to determine whether its rent had previously been regulated under the rent stabilization laws of New York. Although the landlord initially indicated that it was investigating the matter, it never did answer Ms. Dreskin's questions. Consequently, on December 16, 1981, she filed a formal complaint with the Conciliation and Appeals Board of the City of New York (the "CAB") in which she sought a determination of the issue of prior rent regulation. In January of 1982, Ms. Dreskin also began withholding payment of her rent, pending the outcome of the CAB proceeding, which is still in progress.

Approximately eight months later, on August 2, 1982, Arnav commenced this action in federal court, asserting diversity of citizenship and an amount in controversy in excess of $10,000 as the basis for jurisdiction. The complaint states two causes of action: the first for nonpayment and the second for fraud. The latter claim is based on Arnav's allegation that Mr. Dreskin fraudulently induced Arnav into entering the lease by concealing his intention to have his daughter use the apartment as her primary residence.[1]

---

1. This directly conflicts with Ms. Dreskin's statement that she was told by her real estate

agent that her father had to be a signatory and

The understanding of the parties in this matter is of importance because the rent stabilization laws exempt from regulation "housing accommodations which are not occupied by the tenant in possession as his primary residence." N.Y. Unconsol. Laws § 8625 (McKinney Supp.1982). In fact, until recently it was common practice for landlords to try to circumvent the regulations by soliciting tenants who wanted only a secondary residence. The CAB, however, has called that practice into question. CAB Op. No. 15,483 (Feb. 26, 1981). Although evenly divided on the issue of whether landlords could refuse to rent to primary residents, the members of the CAB unanimously held that the sole remedy for a landlord with a legitimate claim against an actual secondary tenant is to apply to the CAB for permission to refuse to renew the lease in question. *Id.* at pp. 3–4. In the meantime, the landlord may not "charge a rent in excess of the stabilized rent." *Id.* at p. 4.

The damages claimed by the plaintiff include both the withheld rent payments, which amount to $4,233.00, and the losses that have resulted from the defendant's alleged fraud. The latter alleged losses are twofold: first, Arnav's loss of its right to refuse renewal of the lease in 1981; and second, a consequential lessening of the market value of the building in which the apartment is situated.

Responding to Arnav's complaint, the defendant has moved to dismiss on several grounds, only two of which need be addressed here. First, Dreskin argues that comity requires that this Court abstain from hearing this action. Second, he argues that the plaintiff has failed to establish that its claim is worth the minimum jurisdictional amount that is required under 28 U.S.C. § 1332(a) (1976).

## I. The Doctrine of Abstention

██ The doctrine of abstention, under which a district court may decline to exercise or postpone the exercise of its jurisdiction, provides an extraordinary and narrow exception to the general obligation of a district court to decide each controversy that is properly before it. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1950). It is a judicially created exception which is to be applied only when an important countervailing interest is thereby served. *Arrow v. Dow,* 636 F.2d 287, 290 (10th Cir.1980). In an appropriate case, the district court may refrain from exercising its authority out of respect for the rightful independence of state governments and to insure the smooth working of the federal judiciary. *Cornelius v. Benevolent Protective Order of Elks,* 382 F.Supp. 1182, 1193 (D.Conn.1974); *Arrow Lakes Dairy, Inc. v. Gill,* 200 F.Supp. 729, 735 (D.Conn.1961).

██ Only one of the widely recognized branches of the doctrine of abstention[2] appears to be applicable in this case: that which grew out of the need to accommodate the unusual problems presented by cases involving transcendent state or local policy concerns. In *Burford v. Sun Oil Co.,* 319 U.S. 315, 317–18, 327, 63 S.Ct. 1098, 1099, 1104, 87 L.Ed. 1424 (1943), the Supreme Court reaffirmed the need for federal trial courts to abstain from exercising jurisdiction where a state's interest in carrying out its domestic policy predominates, especially

---

thereby, Ms. Dreskin thought, a guarantor of her rental payments. Mr. Dreskin, also, claims that his role was merely that of a guarantor and that Arnav was perfectly aware that his daughter would occupy the apartment. She has, in fact, made all of the monthly payments to Arnav.

**2.** The Supreme Court has approved the invocation of the abstention doctrine in four types of cases: (1) where a state court's interpretation of an unclear but pertinent state law might moot or put in a different light a federal consti-

tutional question; (2) where a difficult question of state law is presented that involves state policy concerns whose importance transcends the result in the case at bar; (3) where proceeding with a federal action might interfere with a related state criminal prosecution; and (4) where, in certain exceptional cases, a concurrent state proceeding is pending and a stay or dismissal would achieve wise judicial administration. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–18, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976).

if proceedings in the federal courts are likely to add nothing to, or even detract from, the state's well organized system of regulation and review. Where such a predominant state interest is found, the district court may invoke the abstention doctrine without finding, in addition, a state issue or unclarity in the pertinent state law. *BT Investment Managers, Inc. v. Lewis,* 559 F.2d 950, 955 (5th Cir.1977), *aff'd in part and vacated in part on other grounds,* 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980).

The facts of *Burford* and of the more recently decided *Mathias v. Lennon,* 474 F.Supp. 949 (S.D.N.Y.1979), aptly demonstrate the type of matters to which the abstention doctrine should be applied to avoid harmful federal interference with complex state regulatory systems. In *Burford, supra,* 319 U.S. at 326–32, 63 S.Ct. at 1103–1106, the Supreme Court found that abstention was appropriate for several reasons: first, because the dispute there involved Texas's significant economic interest in the regulation of oil drilling sites; second, because uniform decision had to be made throughout the state in such matters; and, finally, because the Texas Railroad Commission had demonstrated expertise and consistency in resolving similar disputes. In *Mathias, supra,* 474 F.Supp. at 955, the court abstained from exercising jurisdiction over a claim brought by the Illinois Director of Insurance for almost identical reasons: first, because the matter in question was governed by a sophisticated state mechanism of insurance regulation; second, because the state had a significant interest in achieving consistent results in all such matters; and finally, because the expertise of the state system had already been brought to bear upon and was still confronting the exact matter raised in the federal court.

■ The situation in the instant case is remarkably similar to those found in *Burford* and *Mathias.* Not surprisingly, therefore, this Court finds that it must refrain from exercising jurisdiction in this landlord-tenant dispute, which is governed by New York's complex rent control regulations[3] and which, at least in part, has already been taken up by the CAB, the one agency that is most capable of rendering a decision consistent with past and future decisions involving the issues raised herein. It would make no sense whatsoever for this Court to run the risk of handing down an anomalous result when the plaintiff is already before an alternate forum that provides a simple, effective, and speedy procedure for resolving this type of. dispute.[4] Going forward in this Court would cause precisely that interference with state governance, contravention of the principles of federalism, and wasteful disruption of the federal judiciary which the doctrine of abstention has been carefully designed to prevent.

## II. Amount in Controversy

■ Dismissal of this case is further warranted by the plaintiff's failure to bring a claim worth at least the minimum amount required under 28 U.S.C. § 1332(a) (1976). To be sure, the Court may dismiss on this ground only if it appears to a legal certainty that the plaintiff's claim does not exceed $10,000 in value. *See, e.g., Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961). Nonetheless, there must be a reasonable expectation of a recovery of the minimum amount, and not just a colorable allegation thereof. *See, e.g., Glicksman v. Laitman,* 279 F.Supp. 425, 426 (S.D.N.Y.1968).

---

**3.** For an idea of the comprehensiveness and detail of New York's regulatory mechanism, see generally: the Local Emergency Housing Rent Control Act, N.Y. Unconsol. Laws §§ 8601–17 (McKinney 1974 & Supp.1982); The Emergency Tenant Protection Act of 1974, N.Y. Unconsol. Laws §§ 8621–34 (McKinney Supp.1982); the New York City Rent and Rehabilitation Law, N.Y.C. Admin.Code §§ Y51–1.0 to Y51–18.0 (McKinney 1974 & Supp.1982); and the New York City Rent Stabilization Law, N.Y.C. Admin.Code §§ YY51–1.0 to YY51–8.0 (McKinney 1974 & Supp.1982); as well as the various regulations promulgated pursuant to these acts and codes.

**4.** In addition, at the conclusion of a CAB proceeding, an aggrieved party remains with the right to seek review in the New York State courts, pursuant to Article 78, N.Y.Civ. Prac.Law §§ 7801–06 (McKinney 1981).

The plaintiff's claim that its lost opportunity to refuse renewal of the lease to Dreskin is worth a considerable sum of money is speculative, at best. Until the CAB determines the status of Ms. Dreskin's residency in the apartment, this Court cannot know whether the plaintiff was even deprived of such an opportunity.[5] Furthermore, the CAB has yet to determine that the plaintiff may not refuse to renew the lease in the future. Finally, the plaintiff has not offered, and the Court has not found, any reason for attaching a value of several thousand dollars to the past, unexercised right to refuse renewal.

Equally speculative is the plaintiff's claim that the market value of the building in which the apartment is located has been diminished as a result of Mr. Dreskin's alleged fraud. The plaintiff bases this alleged diminution of value upon the claim that rent-stabilized apartments are worth substantially less than those not so regulated. In the absence of a determination by the CAB that the apartment is, in fact, governed by the rent stabilization laws,[6] there is absolutely no evidence that such a diminution of value has occurred or will occur.

Consequently, the Court determines that the plaintiff has not brought a claim worth the minimum amount required under section 1332(a).

The Court must, therefore, grant the defendant's motion to dismiss, both for lack of subject matter jurisdiction and to prevent undue interference with New York's local regulatory procedures.

SO ORDERED.

5. All that Arnav can presently reasonably anticipate in damages is part or all of the $4,233.00 in withheld rent. Even the recovery of much of that sum depends upon Arnav's prevailing in the CAB proceeding.

6. Arnav will not be entitled to damages if the CAB finds that Arnav fraudulently entered into the lease, i.e., with knowledge that Debra Dreskin was the tenant and a primary resident and with intent to evade the rent stabilization laws. Such a determination of fraud on Arnav's part would preclude recovery on the claims before this Court.