AIMS ENTERPRISES, INC., Piedmont American Life Insurance Company and David N. Levinson, Insurance Commissioner of the State of Delaware, in his capacity as Receiver of the Estate of Tara Life Insurance Company of America, Plaintiffs,

v.

William R. MUIR, Jr., in his capacity as Acting Insurance Commissioner of the Commonwealth of Pennsylvania and in his capacity as Ancillary Receiver of the assets of Tara Life Insurance Company of America, Defendant.

Civ. A. No. 85–0170.

United States District Court, M.D. Pennsylvania.

May 22, 1985.

Jack M. Stover, Shearer, Mette & Woodside, Harrisburg, Pa., John Small, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiffs.

Beth C. Sheligo, Asst. Counsel, Legal Div., Com. of Pa. Ins. Dept., Mollie McCurdy, Deputy Atty. Gen., Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction*

Pursuant to Fed.R.Civ.P. 12(b), defendant, William R. Muir, Jr., Acting Insurance Commissioner of the Commonwealth of Pennsylvania, has moved to dismiss plaintiffs' complaint on the following grounds: (1) the court in its discretion should abstain from adjudicating this action; (2) the Eleventh Amendment divests this court of jurisdiction; and (3) the complaint fails to state a claim. We grant the motion because we believe that the correct exercise of our discretion requires us to abstain from this controversy.[1]

### II. *Factual Background*

This case involves a dispute between the Pennsylvania Insurance Commissioner and the Delaware Insurance Commissioner over $200,000 originally owned by Tara Life Insurance Company of America (Tara Life), a Delaware insurance corporation no longer in existence. For the purpose of the motion we accept as true the following allegations of the complaint. Plaintiffs are AIMS Enterprises, Inc. (Enterprises), Piedmont American Life Insurance Company (Piedmont), and David N. Levinson, Delaware Insurance Commissioner. Tara Life was a wholly owned subsidiary of Northeastern Fire Insurance Company of Pennsylvania (NFI), a Pennsylvania domiciled insurer. On June 1, 1984, NFI was dissolved by order of the Pennsylvania Commonwealth Court. Defendant Muir was appointed NFI's statutory liquidator. Prior to that time, on March 25, 1983, Tara Life was placed in court administered rehabilitation in Delaware with the then Delaware Insurance Commissioner appointed as receiver of Tara Life with direction to take possession of the property of the company. On May 16, 1983, the then Pennsylvania Insurance Commissioner was appointed the temporary conservator of Tara Life by the Commonwealth Court which allegedly directed that he take possession of all of Tara Life's assets, "although they had been previously seized and placed in receivership pursuant to the Order of the Delaware Court of Chancery."[2] (Compliant, ¶ 11).

---

1. Accordingly, we will not address the other arguments for dismissal.

   Plaintiffs requested oral argument but, based upon our review of the briefs, we do not believe that oral argument is necessary to a proper disposition of the motion and we deny that request.

2. Actually, the order only directed that the commissioner seize Tara Life's assets in Pennsylvania.

Negotiations between the Delaware Insurance Commissioner and the Pennsylvania Insurance Commissioner concerning Tara Life's assets in Pennsylvania followed. In June of 1983, the Commissioners agreed that Pennsylvania would release all of the assets except a certificate of deposit worth $200,000 (the "Reserve Fund"). Pennsylvania petitioned the Commonwealth Court for release of the assets in conformity with this compromise, asserting that:

retention of $200,000 plus the interest thereon will be sufficient for the purpose of assuring that Pennsylvania policy holders will be paid their claims and that sufficient funds will be available to pay back the $98,000 loan given by George Town to Tara if such loan is determined to be entitled to a priority status.

(Complaint, ¶ 13).

Subsequently, during the rehabilitation of Tara Life, the Delaware Insurance Commissioner arranged for the transfer of the bulk of Tara Life's business to Enterprises. Pennsylvania opposed the proposed Plan of Rehabilitation and Transfer in the Delaware Court of Chancery. The court dismissed Pennsylvania's opposition to the Plan and certain of the assets of Tara Life were transferred to Enterprises. Pennsylvania did not appeal this ruling in the Delaware courts.

Thereafter, Enterprises changed Tara Life's name to Piedmont and title to the Reserve Fund, represented by a certificate of deposit, was changed to Piedmont with the alleged consent of Pennsylvania. Throughout 1984, Pennsylvania led representatives of Piedmont to believe that Pennsylvania would release the Reserve Fund since it was no longer needed to protect Pennsylvania policy holders.

The Tara Estate was created in Delaware from those assets of Tara Life that were not transferred to Enterprises. Pennsylvania submitted proofs of claim against the estate, representing claims for the policyholders and George Town, a creditor of NFI, as set forth in paragraph 13 of the complaint, but "despite having submitted to the jurisdiction of the Delaware Court of Chancery in connection with the liquidation of the Tara Estate and having filed claims in the Delaware liquidation proceeding for the George Town Promissory Note," (Complaint, ¶ 44), the Pennsylvania Insurance Commissioner filed a petition in the Pennsylvania Commonwealth Court on January 11, 1985, to be named as ancillary receiver of Tara Life's assets. The Court so ordered it on January 18, 1985.

This lawsuit followed. Plaintiffs base jurisdiction on diversity of citizenship. Enterprises and Piedmont are Delaware corporations having their principal places of business in North Carolina. Levinson is a citizen of Delaware. Plaintiffs seek a declaratory judgment that, among other things, Enterprises or Piedmont or both own the Reserve Fund, that Muir is barred by *res judicata* and collateral estoppel from asserting any claim to the Fund, and that the orders of the Delaware Court are entitled to full faith and credit. Plaintiffs also request injunctive relief barring Muir from asserting any further claim to the Reserve Fund and from disbursing any portion of it. Plaintiffs request an order directing delivery of the Reserve Fund to Enterprises or Piedmont or both. As a federal question, they also claim their due process rights were violated when Muir was appointed ancillary receiver without notice to them or an opportunity to be heard.

### III.  *Discussion*

After careful consideration, we believe that abstention is appropriate under the following case law.

### A.  *Burford Abstention.*

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that a federal district court should decline to exercise jurisdiction in a case challenging a Texas administrative agency's decision to permit the drilling of oil wells in the East Texas oil field. The Court noted that the agency's action was undertaken as "part of the general regulatory system devised for the conservation of

oil and gas in Texas," *Id.* at 318, 63 S.Ct. at 1099, 87 L.Ed. at 1426. The regulations, devised to prevent the waste of oil and other inefficient practices in the oil field, controlled when and where the different drillers owning portions of the field could drill for oil. The Court stated:

> These questions of regulation of the industry by the State administrative agency, ... so clearly involves basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them.....
>
> The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state court is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. *Cf. Matthews v. Rodgers*, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.

*Id.* at 333–34, 63 S.Ct. at 1106–07, 87 L.Ed. at 1434–35.

The facts in *Burford* presented compelling reasons to abstain from adjudicating the claim. Texas was attempting by regulation to provide for the uniform exploitation of the oil field. The grant of an "exception" to drill, federal review of which was sought in *Burford,* was often done to insure that oil would be pumped from the ground before it was lost forever by the dissipation of the gas and water that assisted the drillers in retrieving it. The overall plan of regulation, involving "nonlegal

complexities," *id.* at 323, 63 S.Ct. at 1102, 87 L.Ed. at 1429, was "of vital interest to the general public," *id.* at 324, 63 S.Ct. at 1103, 87 L.Ed. at 1430, and had implications for "the whole economy of the state." *Id.,* 63 S.Ct. at 1103, 87 L.Ed. at 1430.

Accordingly, "[i]t is difficult to distill a clear guide for abstention from *Burford* ...." *Metropolitan Life Insurance Co. v. Board of Directors of Wisconsin Insurance Security Fund,* 572 F.Supp. 460, 472 (W.D.Wis.1983) (brackets added). In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court refused to apply *Burford* abstention but did note significantly, citing *Pennsylvania v. Williams,* 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935), that abstention would be appropriate if the exercise of federal jurisdiction would interrupt state efforts to enforce state policy by restraining the exercise of authority vested in state officials.

Thus, the general principle of *Burford* has been applied in state administrative settings, including the regulation of insurance. In *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), the Second Circuit Court of Appeals, relying in part upon *Burford,* held that a district court should have abstained from a controversy between retired employees of an insurance company and the New York Superintendent of Insurance, acting as rehabilitator and liquidator of the company. In federal court the employees had claimed that the Superintendent's decision to terminate certain retirement benefits violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381.[3] The Superintendent had sought approval of that termination in the state courts. The Court of Appeals stated:

> In keeping with *Burford's* concern with noninterruption with state administrative programs, the federal courts have abstained in numerous areas where state

---

**3.** The retired employees also claimed a breach of fiduciary duty under ERISA which was disposed of on the merits by the Court of Appeals because of its prior case law establishing that claims for breach of such fiduciary duty is within the exclusive jurisdiction of the federal courts.

regulation involved matters of substantial state concern and where state policies were carried out in a statutorily established regulatory program by state officials. *See, e.g., Alabama Public Service Commission v. Southern Railway,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (state regulation of intrastate railroad passenger service); *Kelly Services, Inc. v. Johnson,* 542 F.2d 31 (7th 1976) (state regulation of employment agencies). Most important for our purposes, *Burford* abstention has been applied to state regulation of insurance. *See, e.g., Smith v. Metropolitan Property and Liability Insurance Co.,* 629 F.2d 757 (2d Cir.1980); *Meicler v. Aetna Casualty & Surety Co.,* 372 F.Supp. 509 (S.D.Tex. 1974) *aff'd,* 506 F.2d 732 (5th Cir.1975); *Mathias .v. Lennon,* 474 F.Supp. 949 (S.D.N.Y.1979).

In this case, New York State has a complex administrative and judicial system for regulating and liquidating domestic insurance companies....

It is also highly significant that the state scheme has been adopted pursuant to congressional authorization. In the McCarran-Ferguson Act 15 U.S.C. § 1011–1015, Congress mandated that regulation of the insurance industry be left to the individual states.... Federal courts have therefore been slow to interrupt such schemes unless necessary particularly when federal court action would impinge upon the area in which Congress has recognized the overriding interest of the States.

*Id.* at 963–64.

The reasoning of *Levy* applies directly to the case at bar. Pennsylvania also has a complex administrative and judicial system for regulating insurance companies. *See* 40 P.S. § 221.1 *et seq.* (Purdon Supp.1984–85). The Pennsylvania Insurance Commissioner has acted pursuant to that authority in petitioning the Commonwealth Court to name him ancillary receiver of Tara Life's assets in this state. *See* 40 P.S. § 221.56. *Burford* and *Levy* therefore indicate abstention is appropriate here.

Plaintiffs argue, however, that adjudicating their claim would not interfere with Pennsylvania's interest in regulating the insurance industry within the State. In their view there is no ongoing rehabilitation or liquidation occurring here. Tara Life has already gone through that in Delaware. Plaintiffs assert they are merely trying to establish the ownership of the Reserve Fund and that full faith and credit should be accorded the Delaware court decision on the rehabilitation of Tara Life. They point out that Pennsylvania voluntarily intervened in the Delaware proceedings and failed to appeal the Delaware court's order approving the plan of rehabilitation for Tara Life.

We do not find the situation as simple as plaintiffs describe it. While Pennsylvania did appear and argue its position in the Delaware court, its conduct during the course of the rehabilitation of Tara Life certainly indicates an intent to look to the Reserve Fund as a possible source of compensation for creditors of NFI and its policyholders. The complaint implies that Pennsylvania insurance officials eventually decided to abandon the Reserve Fund because they believed that it was no longer necessary to protect Pennsylvania policyholders. (Complaint, ¶ 36). The subsequent action of the Commissioner, however, in petitioning the Commonwealth Court for appointment as ancillary receiver would indicate otherwise. Additionally, it is consistent with the course taken by the Pennsylvania Department from the beginning of Tara Life's rehabilitation. Pennsylvania seized all of the company's assets in Pennsylvania and only after negotiations with Delaware did it reduce its claim solely to the Reserve Fund.

Further, plaintiffs' claim that the Delaware court proceedings conferred unfettered ownership of the Reserve Fund upon them does not appear to be entirely accurate. The Plan of Rehabilitation For Tara Life, approved by the court, does purport to transfer the Fund to Enterprises but paragraph 4.6 of the Agreement For Plan of Rehabilitation And Transfer of Stock,

dealing with encumbrances upon Tara Life's assets, notes that the Fund is subject to the "order of the Pennsylvania Commonwealth Court and the claims of the Pennsylvania Department of Insurance as to $200,000 plus interest in Tara's bank accounts located in Pennsylvania." (Complaint, Exhibit D).

Under these circumstances, if we decided to proceed with this case, we would be intruding into Pennsylvania's regulatory processes. Pennsylvania's position as an ancillary receiver does not involve a full scale rehabilitation or liquidation. The insurance commissioner, is, nevertheless, acting pursuant to statutory authority and in the interests of Pennsylvania policyholders and creditors.

### B. Colorado River "Abstention"

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court held that certain cases, while not coming properly within an established abstention category, should still be dismissed by a federal court when there is a concurrent state proceeding. The court stated:

It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. [citations omitted].... In assessing the appropriateness of a dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, [citation omitted], the desirability to avoid piecemeal litigation, [citation omitted], and the order in which jurisdiction was obtained by the concurrent forums [citation omitted]. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.

[citation omitted]. Only the clearest of justifications will warrant dismissal. *Id.* at 818, 96 S.Ct. at 1246–47, 47 L.Ed.2d at 498–99 (brackets added).

In *Colorado River* the federal government tried to assert in federal court claims to water within Colorado on its own behalf and as trustee for Indian water rights. The claims were based upon state law controlling the priority of water rights within the state. Subsequently, a defendant in the federal court action sought to join the United States in a state court proceeding adjudicating the same rights. The district court had decided that abstention was appropriate and left the parties to the state court proceedings. The Court of Appeals reversed. The Supreme Court, stating that none of the abstention doctrines applied, nevertheless held that dismissal was appropriate because the McCarran Amendment, 43 U.S.C. § 666, permitting joinder of the United States in any suit for the adjudication of rights to water, evidenced a clear federal policy of avoiding piecemeal litigation to water rights. The Court stated that this policy:

is akin to that underlying the rule that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property.

*Id.* at 819, 96 S.Ct. at 1247, 47 L.Ed.2d at 499.

In the instant case, there is the express federal policy to leave the regulation of insurance to the states. Additionally, proceedings had been instituted in the Pennsylvania Commonwealth Court prior to the filing of this action and "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Id.* at 818, 96 S.Ct. 1246, 47 L.Ed.2d at 498.[4]

Plaintiffs argue that this action is *in personam* and not *in rem* and thus the

---

**4.** We also add that nothing has happened in this action subsequent to the filing of the complaint except the filing of the motion to dismiss. This factor weighs in favor of our decision to dismiss the complaint. *Id.* at 820, 96 S.Ct. at 1248, 47 L.Ed.2d at 500.

latter rule should not apply here. The same argument was raised in *Metropolitan Life Insurance Co. v. Board of Directors of Wisconsin Insurance Security Fund, supra.* There, the court stated:

Although plaintiffs' complaint is brought *in personam* rather than *in rem,* and is directed to the Reliable Segregated Account the consequences of the filing are not different. Whether plaintiffs' suit is essentially against the segregated account ... and thus an *in rem* proceeding or whether the suit is viewed as an *in personam* action which interferes with the state court's *in rem* liquidation proceedings, the result is the same: this court must defer to the state court proceedings to avoid the "unseemly and disastrous conflicts" that would arise if this court were to issue rulings that reduced the funding in the account....

527 F.Supp. at 471; *see also Levy v. Lewis, supra.*

We conclude that *Colorado River* abstention applies to this action.

## C. *Younger Abstention.*

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a district court could not enjoin a state criminal prosecution pursued under a possibly unconstitutional statute absent unusual circumstances. "[T]he *Younger* doctrine has been expanding, and presently requires that abstention be decreed in cases far removed from proceedings to which the *Younger* case itself originally ordered deference." *Williams v. Red Bank Board of Education,* 662 F.2d 1008, 1013 (3d Cir.1981). We have no doubt that the doctrine applies here. In *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court stated:

The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state inter-

ests are involved. [citations omitted]. The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature.... Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. [citations omitted]. Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore* [*v. Sims,* 442 U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994, 1005 (1979) ]. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Id.,* at 430, 99 S.Ct. at 2371, 60 L.Ed.2d 994.

*Id.* at 432, 102 S.Ct. at 2521, 73 L.Ed.2d at 124 (brackets added).

We may paraphrase the relevant test for the application of the *Younger* doctrine set forth in *Middlesex County Ethics Committee* as follows: first, do the proceedings in the Commonwealth Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate an important state interest; third, is there an adequate opportunity in the state proceedings to raise constitutional challenges. *Id.* at 432, 102 S.Ct. at 2522, 73 L.Ed.2d at 125.

The first two questions may be readily answered affirmatively. To vindicate the state interest in the regulation of insurance the Pennsylvania Insurance Commissioner has gone to a state court and, pursuant to statutory authority, has been named ancillary receiver of Tara Life's assets in Pennsylvania. While he has done nothing else, plaintiffs anticipate he will seek approval from the state court to distribute the assets for the benefit of the creditors of NFI, formerly Tara Life's parent company. They have accordingly sought an injunction against him to prevent his seizure of the Reserve Fund. Clearly, an ongoing state

judicial proceeding is involved here to protect important state interests.

Additionally, plaintiffs have an adequate opportunity to present their due process claims to the state court. Although they allege that *"counsel* for the Department of Insurance *has taken the position* that it is too late for Piedmont, Enterprises, the Tara Estate or the Delaware Department of Insurance to intervene in the Commonwealth Court's proceeding," (Complaint, ¶ 49) (emphasis added), we can find no legal impediment to plaintiffs' appearing in that court and presenting the arguments they advance here.[5] Pa.R.App.P. 106, governing procedure in the Commonwealth Court, provides as follows:

> Unless otherwise prescribed by these rules the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas, so far as they may be applied.

Pa.R.Civ.P. 206, 208 and 209 permit the filing of an answer to any petition. Additionally, as we read the statutory sections dealing with liquidation of insurance companies, plaintiffs have an opportunity to be heard in court before the Pennsylvania Insurance Commissioner disposes of the Reserve Fund. *See* 40 P.S. §§ 221.56(c), 221.-58(b), 221.37, 221.38, 221.41, 221.45, 221.46. Thus, in the instant case, plaintiffs can advance all their arguments in the Commonwealth Court and we believe that *Younger* abstention should be exercised. "[A] decision not too abstain would signal others that the filing of a federal lawsuit will circumvent the state's administrative mechanisms and release them from agency proceedings." *Allegheny Land and Mineral Co. v. Pennsylvania Securities Commission,* No. 82–0895, slip op. at 16 (M.D.Pa. July 25, 1983) (Herman, J.) (brackets added).

**5.** Defendant admits in his brief on abstention that plaintiffs have the opportunity to appear in

state court and oppose any seizure of the Reserve Fund.