**CAPITOL INDEMNITY CORPORATION,**
Plaintiff,

v.

Salvatore **CURIALE**, Individually, and Salvatore Curiale, Superintendent of Insurance of the State of New York, as Liquidator, Stephen Doody, Individually, and Stephen Doody, as Deputy Superintendent of Insurance of the State of New York and General Counsel to the New York State Insurance Department Liquidation Bureau, Defendants.

No. 92 Civ. 3842 (JES).

United States District Court,
S.D. New York.

Dec. 30, 1994.

Ohrenstein & Brown, New York City (John Paul Fulco, of counsel), for plaintiff.

Costigan & Berns, New York City (John P. McConnell, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Capitol Indemnity Corporation ("Capitol") brings this action against defendants Salvatore Curiale and Stephen Doody (collectively "defendants") seeking to recover for civil rights violations under 42 U.S.C. § 1983, conversion, negligence and breach of fiduciary duty. Capitol seeks relief against Curiale both individually, and in his capacity as Superintendent of Insurance of the State of New York (the "Superintendent") as Liquidator of three insolvent New York insurance companies and as Conservator of one insolvent California insurance company. Capitol seeks relief against Doody individually, as Deputy Superintendent of Insurance of the State of New York, and as General Counsel to the New York State Insurance Department Liquidation Bureau. The parties have cross-moved for summary judgment, and de-

fendants have moved to dismiss under the doctrine of abstention. For the reasons that follow, the defendants' motion to dismiss is granted.

## BACKGROUND

In the early 1960's, several insurance companies pooled their reserves and participated in a reinsurance pool known as the Agency Managers Casualty Reinsurance Pool (the "AMI Pool").[1] Plaintiff's Local Rule 3(g) Statement dated September 28, 1993 ("Pltf.Rule 3(g) St.") ¶ 5. Managed by Agency Managers, Inc. ("AMI"), the AMI Pool reinsured portions of casualty risks originally insured by primary insurers, otherwise known as cedents. *Id.* ¶ 5. In order to limit its potential liabilities, the AMI Pool obtained reinsurance through other companies known as "retrocessionaires."[2] *Id.* ¶ 6. During its involvement in the AMI Pool, Capitol operated as a direct participant in the AMI Pool, as an individual retrocessionaire of the AMI Pool, and as a member of a group retrocessionaire of the AMI Pool. *Id.* ¶ 7; Defendants' Official Capacity Local Rule 3(g) Statement dated August 16, 1993 ("Deft.Official Rule 3(g) St.") ¶ 10; Affidavit of Al Valuntas Sworn to April 7, 1993 ("Valuntas Aff.") ¶ 8.

In order for the AMI Pool to obtain balance sheet credit for potential reinsurance recoveries, Capitol established various trust accounts at Marine Midland Bank and Manufacturers Hanover Trust, both of which are located in New York (the "trust fund accounts"). Pltf.Rule 3(g) St. ¶ 8; Affidavit of Paul Breitnauer Sworn to April 7, 1993

("Breitnauer Aff.") ¶ 3; Valuntas Aff. ¶¶ 6, 13–18. In addition, AMI established and operated its own Master Operating Account, into which it paid premiums, recoveries on salvage and subrogation claims and retrocessional recoveries. Valuntas Aff. ¶ 6. The Master Operating Account functioned as a clearinghouse through which AMI would credit the individual operating accounts of AMI Pool members. *Id.* ¶ 6. Pursuant to certain retrocessional agreements, AMI was authorized under limited circumstances to withdraw from the trust fund accounts in order to pay the reinsurance claims filed by members of the AMI Pool.[3] Pltf.Rule 3(g) St. ¶ 8; Breitnauer Aff. ¶¶ 3–5. The instant action concerns the ownership of some of these funds, and the Superintendent's actions in regard thereto.

On January 10, 1978, the State of California declared a member of the AMI Pool, Imperial Insurance Co. ("Imperial"), to be insolvent and placed it into liquidation. Deft.Official Rule 3(g) St. ¶¶ 2–3; Affidavit of Elie Heffez Sworn to August 16, 1993 ("Heffez Aff.") ¶ 5, Exh. B. On February 9, 1978, the Supreme Court for the State of New York appointed the Superintendent, or his successors, as Conservator of Imperial's assets located within the state. Deft.Official Rule 3(g) St. ¶¶ 2–3; Heffez Aff. ¶ 5, Exh. B. Between May 1979 and August 1986, the court declared three other members of the AMI Pool, Consolidated Mutual Insurance Co. ("Consolidated"), Cosmopolitan Insurance Co. ("Cosmopolitan") and Dominion Insurance Co. of America ("Dominion") to be insolvent and placed them into liquidation. Deft.Official Rule 3(g) St. ¶¶ 4–9; Heffez Aff.

---

1. As defined by one court, "[r]einsurance is the 'ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the ... ceding company, ... (which) retains all contract with the original insured, and handles all matters prior to and subsequent to loss.'" *Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. 715, 724 (S.D.N.Y.1977) (quoting 13A J. Appleman & J. Appleman, *Insurance Law & Practice* § 7681, ch. 278, at 480 (rev. ed. 1976)).

2. In effect, a retrocessionaire reinsures the reinsurer. By way of example, if an insured recovers on a policy against a cedent, or primary insurer, the cedent would then recover a portion of its

loss from the reinsurance pool. In turn, the reinsurance pool would then recover a portion of its loss from the retrocessionaire, *i.e.,* the reinsurer of the reinsurer.

3. Although no written agreement apparently exists, Capitol claims that AMI was required to comply with the following procedures prior to withdrawing funds from the trust fund accounts: (1) the AMI Pool member was required to itemize its claims; (2) the AMI Pool member was required to submit a proof of loss and payment thereof; and (3) if necessary, Capitol was entitled to inspect relevant records, including contractual provisions regarding coverage. Breitnauer Aff. ¶ 4.

¶¶ 6–8, Exhs. D, F & H. During that period, the court also appointed the Superintendent, or his successors, as the Liquidator of the three insolvent insurance companies. Deft.Official Rule 3(g) St. ¶¶ 4–9; Heffez Aff. Exhs. D, F & H.

On August 30, 1988, the AMI Pool filed for bankruptcy protection under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 701 *et seq.*, and a trustee (the "AMI Trustee") assumed custody over the insolvent estate, including the trust fund accounts.[4] Deft.Official Rule 3(g) St. ¶ 11; Heffez Aff. ¶ 12. In or about May 1989, the AMI Trustee applied to the bankruptcy court for an order permitting the abandonment of certain funds. Heffez Aff.Exh. I at 3. In or about August 1989, the Superintendent applied to the bankruptcy court for an order directing that the aforesaid funds be turned over to the Superintendent. *Id.* On July 12, 1989, Capitol informed the AMI Trustee of its claim to a portion of the aforementioned trust fund accounts, but the AMI Trustee rejected the claim. Pltf.Rule 3(g) St. ¶ 20; Heffez Aff.Exh. K. On August 10, August 22 and November 15, 1989, the Superintendent also rejected Capitol's claim to the funds. Heffez Aff. ¶ 14–15, 17, Exhs. L, M, & N. On September 27, 1989, pursuant to a Stipulation between the AMI Trustee and the Liquidator, the United States Bankruptcy Court for the Southern District of New York ordered the AMI Trustee to abandon and transfer the trust fund accounts to the Superintendent. Heffez Aff.Exh. I; Valuntas Aff.Exh. A. In or about November 1989, the AMI Trustee transferred the trust fund accounts to the Superintendent in his capacity as Liquidator of Cosmopolitan, Consolidated and Dominion and as Conservator of Imperial. Pltf.Rule 3(g) St. ¶ 16; Heffez Aff. ¶ 16. In or around March 1990, the Superintendent allocated the transferred funds among the various insolvent estates in accordance with their entitlements as former pool participants. Pltf.Rule 3(g) St. ¶ 23; Heffez Aff. ¶ 16.

In or about June 1990, defendant Curiale was appointed Superintendent of Insurance for the State of New York and assumed the position as Liquidator of Cosmopolitan, Consolidated and Dominion and Conservator of Imperial pursuant to Article 74 of the New York State Insurance Law. On June 18, 1992, Capitol commenced the instant action against Curiale in his official capacity as the Superintendent. On or about March 24, 1993, the Superintendent commenced three contempt actions in the Supreme Court of the State of New York alleging that Capitol had violated the terms of the conservation order and two of the three liquidation orders.[5] In turn, Capitol removed the contempt actions to this Court. *See Capitol Indemnity Corp. v. Curiale*, 92 Civ. 2262 (JES) (Imperial); *Capitol Indemnity Corp. v. Curiale*, 93 Civ. 2263 (JES) (Cosmopolitan); *Capitol Indemnity Corp. v. Curiale*, 93 Civ. 2437 (JES) (Dominion). In response, the Superintendent moved for summary judgment or, in the alternative, for a remand to the state court. On May 27, 1993, the Court denied the Superintendent's motions, and issued an order enjoining the enforcement of any contempt proceedings related to the instant action.

█ In this action, Capitol claims that certain funds transferred by the AMI Trustee to the Superintendent are owned by Capitol, and that such funds were distributed by the Superintendent in violation of the retrocessional agreements. Affidavit of Terence P. Cummings Sworn to April 8, 1993 at ¶¶ 5–7; Reply Affidavit of Paul Breitnauer Sworn to May 19, 1993 at ¶¶ 2–6; Reply Affidavit of Al Valuntas Sworn to May 19, 1993 at ¶¶ 2–11. In its original complaint, Capitol asserted claims only against the Superintendent in his official capacity.

---

4. AMI ceased operations in 1986. Thereafter, Run–Off Management, Inc. ("ROM") began to wind up the business of the AMI Pool. Valuntas Aff. ¶ 4.

5. In order to facilitate rehabilitation and liquidation proceedings, the liquidation court may issue such orders "as it deems necessary to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer." N.Y.Ins.Law § 7419(b) (McKinney 1985). Accordingly, in this case, the state court enjoined all persons "from bringing or further prosecuting any action at law [or] suit in equity" against the Superintendent, or his successors, as Liquidator or Conservator. Heffez Aff.Exhs. B, D, F, & H.

However, on June 21, 1993, after a conference at which Eleventh Amendment and abstention issues were discussed in light of the Superintendent having been sued only in that official capacity, Capitol filed an amended complaint asserting claims against both defendants in both their personal and official capacities. In its amended complaint, Capitol seeks to recover based upon the theories of conversion, negligence, breach of fiduciary duty, and a violation of its civil rights under 42 U.S.C. § 1983. The parties have cross-moved for summary judgment, and defendants have moved to dismiss under the doctrine of abstention.[6]

## DISCUSSION

As a general rule, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Nevertheless, the United States Supreme Court has established at least four exceptions to this rule, under which federal courts may abstain from exercising their jurisdiction in a particular case. *See, e.g., Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) ("*Pullman* abstention"); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) ("*Burford* abstention"); *Colorado River*, 424 U.S. at 800, 96 S.Ct. at 1236 ("*Colorado River* abstention"); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ("*Younger* abstention"). Relying upon the principles set forth by the Supreme Court in *Burford* and *Colorado River*, the Superintendent argues that the instant action "is one of those exceptional cases where the district court should decline to decide a dispute properly before it." *Canaday v. Koch*, 608 F.Supp. 1460, 1466 (S.D.N.Y.), *aff'd*, 768 F.2d 501 (2d Cir.1985).

■ Based upon principles of federalism and comity, *Burford* abstention requires federal courts to abstain where the exercise of jurisdiction would unnecessarily interfere with the administration of a complex state regulatory system. *See New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514–15, 105 L.Ed.2d 298 (1989). By enacting the McCarren–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, Congress provided states with exclusive jurisdiction over insurance administration and regulation, thereby creating an important state interest. *See Mathias v. Lennon*, 474 F.Supp. 949, 951 (S.D.N.Y.1979). Pursuant to that congressional mandate, the State of New York has established a complex regulatory scheme covering the rehabilitation, liquidation, conservation and the dissolution of insurance companies. *See generally* N.Y.Ins. Law Art. 74 (McKinney 1985). As recognized by the New York Court of Appeals, that regulatory scheme "is intended to and does furnish a 'comprehensive, economical, and efficient method for the winding up of the affairs' of ... insurance companies by the Superintendent ..." *Knickerbocker Agency Inc. v. Holz*, 4 N.Y.2d 245, 250, 173 N.Y.S.2d 602, 149 N.E.2d 885 (1958) (quoting *Motlow v. Southern Holding & Sec. Corp.*, 95 F.2d 721, 724 (8th Cir.), *cert. denied*, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938)).

In a number of decisions, the Second Circuit has clearly established that *Burford* abstention is appropriate in the context of a state's liquidation of insurance companies. In *Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980), the Second Circuit upheld *Burford* abstention where a class of former employees claimed that the termination of retirement benefits by the Superintendent constituted a breach of fiduciary duty and violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq. Id.* at 963–64. In *Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38 (2d Cir.1986), the Second Circuit upheld *Burford* abstention where a Bermuda insurance company commenced an action against the Superintendent, seeking a declaration of its rights under certain reinsurance

---

**6.** Capitol was duly incorporated in the State of Wisconsin, and its principal place of business is in Madison, Wisconsin. Pltf.Rule 3(g) St. ¶ 1. Curiale is a citizen of the State of New York in his individual capacity and as Superintendent of Insurance for the State of New York. Amended Complaint ¶ 2. Doody is a citizen of the State of New York in his individual capacity and as Deputy Superintendent of Insurance and General Counsel for the State of New York. *Id.* ¶ 3. The Court possesses subject matter jurisdiction based upon diversity of citizenship. *See* 28 U.S.C. § 1332(a).

policies. *Id.* at 43–44. In *Corcoran v. Ardra Ins. Co.,* 842 F.2d 31 (2d Cir.1988), an action removed from state court, the Second Circuit upheld *Burford* abstention where the Superintendent sought to recover certain reinsurance payments from an insurance company. *Id.* at 37. In all of these cases, the Second Circuit recognized the state's strong interest in centralizing adjudication in the court supervising the liquidation or rehabilitation of insurance companies, and the comprehensive regulatory system enacted in regard thereto. *See Ardra,* 842 F.2d at 37; *Law Enforcement,* 807 F.2d at 43–44; *Levy,* 635 F.2d at 963–64; *see also* Affidavit of Stephen Doody Sworn to August 16, 1993 ("Doody Aff.") ¶¶ 5–7. The Court concludes that those cases require abstention here.

■ The Court rejects Capitol's argument that abstention is inappropriate because Capitol seeks to hold the defendants personally liable. Under New York law, the Superintendent is regarded as a statutory receiver in his capacities as conservator, rehabilitator and liquidator. *See In re Lawyers Mortgage Co.,* 293 N.Y. 159, 162, 56 N.E.2d 305 (1944); *Pink v. Title Guarantee & Trust Co.,* 274 N.Y. 167, 170–71, 8 N.E.2d 321 (1937). As a general rule, actions against a receiver are not personal in nature, but are against the receivership or the related funds. *See McNulta v. Lochridge,* 141 U.S. 327, 332, 12 S.Ct. 11, 13, 35 L.Ed. 796 (1891). Under limited circumstances, such as where a receiver has acted beyond the scope of his authority, the receiver may be sued in a personal or individual capacity. *See Ziegler v. Pitney,* 139 F.2d 595, 596 (2d Cir.1943).

In this case, neither the amended complaint nor the voluminous evidence before the Court suggests that either defendant acted *ultra vires.* In his capacity as Liquidator, the Superintendent merely determined that Capitol was not entitled to any funds based upon AMI's worksheets and a comprehensive analysis of Capitol's claim. Heffez Aff. ¶ 14, Exh. N. The record in no way supports any rational inference that either defendant acted other than in his official capacity, or that either defendant benefitted personally at the expense of the receivership estates. Deft.Official Rule 3(g) St. ¶¶ 2–3; Defendants Individual Capacity Rule 3(g) Statement dated August 16, 1993 ("Deft.Individual Rule 3(g) St.") ¶¶ 4–7.

Indeed, the Superintendent could only have exercised possession, custody or control over the disputed funds subject to the direction and approval of the liquidation court, and only in his official capacity. Doody Aff. ¶¶ 8–9. In recognition of that fact, the Liquidation Bureau of the Department of Insurance maintains insurance coverage and funds the premiums out of the insolvent estates. *Id.* ¶ 10. In sum, regardless of Capitol's alleged legal entitlement to the disputed funds, the Superintendent's simple denial of its claim, unsupported by any other evidence of wrongdoing, cannot transform his actions into an *ultra vires* act. *See Federal Deposit Ins. Corp. v. Bernstein,* 786 F.Supp. 170, 181–82 (E.D.N.Y.1992). Nor does the mere filing of a claim against the Superintendent in an individual capacity have any significance in the absence of some factual allegations supporting a rational inference of self-dealing.[7]

■ The Court also rejects Capitol's argument that abstention is inappropriate because federal law governs its § 1983 claim. It is well-established that state and federal courts possess concurrent jurisdiction over claims under § 1983. *See Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988); *Patsy v. Board of Regents,* 457 U.S. 496, 506–507, 102 S.Ct. 2557, 2562–63, 73 L.Ed.2d 172 (1982). In matters of concurrent state and federal jurisdiction, the application of *Burford* abstention is not rendered inappropriate by the presence of federal claims. *See Levy,* 635 F.2d at 964 ("In *Burford* itself, violations of federal law were alleged."). Therefore, the Court concludes that the federal claim should "be left in the first instance to the Superintendent with review available in the state courts and ultimately in the United States Supreme Court." *Id.*

Accordingly, in view of both the comprehensive regulatory scheme adopted by the

---

7. In any event, the Second Circuit upheld *Burford* abstention in *Levy,* notwithstanding the fact that the Superintendent was named in both his individual and official capacities. *See Levy,* 635 F.2d at 963–64; *see also Bernstein,* 786 F.Supp. at 181 n. 9.

State of New York and the governing judicial precedent, the Court concludes that *Burford* abstention is clearly appropriate in this case. In light of the foregoing, the Court need not address the applicability of *Colorado River* abstention in the present case.

### Conclusion

Although the parties have cross-moved for summary judgment on the merits, the Court declines to exercise its jurisdiction based upon the principles set forth in *Burford* and its progeny. Moreover, because *Burford* abstention seeks to avoid federal interference in areas properly regulated by the state, the Court dismisses the complaint, rather than staying the federal action pending resolution of the state court proceedings. *See Ardra,* 842 F.2d at 36; *Mathias,* 474 F.Supp. at 955 n. 5, 957.

For the foregoing reasons, defendants' motion to dismiss shall be and hereby is granted. Accordingly, the Clerk of the Court is directed to enter appropriate judgment for the defendants and close the above-captioned action.

It is **SO ORDERED.**